A97A1640. HAWKINS v. BROWN et al.
(491 SE2d 423)

MCMURRAY, Presiding Judge.

Plaintiff Crystal Hawkins brought this tort action against defendants Charles Brown and Annie Doris Brown, alleging she broke her right ankle as she was leaving defendants' home. Defendants admitted that plaintiff "walked out on the porch and down some steps. The porch was covered [with] indoor/outdoor carpet. . . . The steps were mostly not covered with indoor-outdoor carpet. . . . At the bottom step, there was another piece of the indoor/outdoor carpet that extended beyond the step." But defendants denied the following material allegations: "Unknown to plaintiff, there was [an alleged] hole under this carpet." Plaintiff "stepped in this hole and tripped

and fell."

After discovery, defendants moved for summary judgment. The evidence, viewed in the light most favorable to plaintiff as the non-movant, authorized the following facts: Plaintiff and her family "dropped by" at the Brown residence to see Mary Hawkins, the aunt of plaintiff's husband, James Eugene Hawkins. James Eugene Hawkins affirmed there is a "concrete walkway . . . shown in some pictures, one end of [which] walkway goes to the steps going up the porch. . . ." That walkway "cuts to the left as you come off of the steps," and leads to the parking area where plaintiff's husband had parked their car. The Hawkins family "got out [of] the car and [came] straight through the grass." "And once [they] got to the grass, there was carpet in that grass, and [they] walked on to the steps. . . ." "As [she was] walking across the grass on the way to the porch [plaintiff saw] the carpet piece in the yard[.] . . . It was similar to the piece that was on the porch and on the steps. It was like artificial turf, a thin artificial turf type carpet."

Defendant Charles Brown shook hands with James Hawkins but left after two or three minutes. Plaintiff descended "two stairs, steps; and because the car was sitting at an angle, [they] walked out this way [across the grass] and [she] — there is a carpet, a carpet piece that was covering this [hole]. [Plaintiff] stepped on the corner of that carpet, . . . blacked out [from ankle pain], and . . . went down on the ground." That is, she "stepped in the hole, . . . and to the best of [her] knowledge, simultaneously broke [her] ankle and blacked out."

This hole was "two or three steps . . ." from the walkway. The "left-hand corner of the carpet . . ." covered the hole. Plaintiff's husband "raised the carpet up, and [discovered] there was a little hole that if you [are not] watching where you are going and your foot go[es] the wrong way you can twist it like that or either break it." "[I]t's like a little slosh hole."

The trial court granted summary judgment, concluding that defendants breached no duty of care owed to plaintiff. This direct appeal followed. *Held*:

1. Based on the undisputed evidence that plaintiff and her family arrived unannounced for a personal family visit, plaintiff is a social guest. As a social guest she was a licensee and not an invitee. *Riley v. Brasunas*, 210 Ga. App. 865, 866 (1) (438 SE2d 113). Accord *Robinson v. Turner*, 164 Ga. App. 515, 516 (297 SE2d 522).

2. Plaintiff enumerates the grant of summary judgment, arguing material fact questions remain for jury resolution.

"The owner of the premises is liable to a licensee only for willful or wanton injury." OCGA § 51-3-2 (b). This is the rule with respect to static or passive conditions on the land, even where the presence of a trespasser or licensee is actually known. *Trammell v. Baird*, 262 Ga.

124, 126 (413 SE2d 445). "To the licensee, as to the trespasser, no duty arises of keeping the usual condition of the premises up to any given standard of safety, except that they must not contain pitfalls, man-traps, and things of that character." *Mandeville Mills v. Dale*, 2 Ga. App. 607, 609 (1), 610 (58 SE 1060). The question for decision in the case sub judice is whether the small depression in defendants' residential yard, two or three steps from the concrete sidewalk (that plaintiff did not use), which hole was covered by a corner of indoor-outdoor carpeting, constituted a mantrap, a pitfall, "or other [contrivance] so dangerous in character as to imply a disregard of consequences or a willingness to inflict injury. [Cit.]" *Wilder v. Gardner*, 39 Ga. App. 608 (1), (2) (147 SE 911). In our judgment, it does not.

"The doctrine of mantrap or pitfall is rested upon the theory that the owner is expecting a trespasser or a licensee and has prepared the premises to do him injury. [Cit.]" *Crosby v. Savannah Elec. &c. Co.*, 114 Ga. App. 193, 195 (1), 198 (150 SE2d 563). The dangerous device in *Wilder v. Gardner*, 39 Ga. App. 608 (2), supra, was a spring-gun. In *Mathis-Akins Concrete Block Co. v. Tucker*, 127 Ga. App. 699 (194 SE2d 604), a pit, large enough for the night watchman to fall into, had hitherto been covered by a railroad hopper-car. This was sufficient evidence to authorize a jury instruction on a pitfall. Id. at 700 (3). In *Harvill v. Swift & Co.*, 102 Ga. App. 543, 544, 548 (117 SE2d 202), this Court reversed the grant of defendant's motion for directed verdict, where that plaintiff drove a delivery truck to defendant's place of business and "stepped from the dock, the floor of which was approximately three feet high, and his right foot went into an open manhole which was maintained some eight or ten inches from the edge of the unloading dock." Conversely, in *Todd v. Armour & Co.*, 44 Ga. App. 609 (162 SE 394), this Court held that the maintenance of an "open staircase 'well' . . . leading from the outside into the basement of defendant's building . . ." did not evince wilful and wanton negligence towards that plaintiff, a licensee firefighter. "The instant case [also] differs from that of *Smith v. Seawright*, 33 Ga. App. 336 [(1)] (126 S. E. 301), in that in the *Smith* case the duty owed to the plaintiff was not that of a mere licensee, and in that case the open excavation constituting the alleged negligence was situated in such close and dangerous proximity to the sidewalk as to subject one using it in the exercise of ordinary care to the danger of casually falling therein[.]" *Todd v. Armour & Co.*, 44 Ga. App. 609, 610, supra. See also the excellent survey of mantrap cases recited in *Crosby v. Savannah Elec. &c. Co.*, 114 Ga. App. 193, supra at 199-201.

"So long as it is not so close to the traveled way as to constitute a peril to those who may accidentally step aside from the traveled way, a party may excavate upon his land or have holes thereon and this right is not subject to abridgement by parties happening to go out of

their way and receiving injuries. See *Kohn v. Lovett*, 44 Ga. 251[, 257-258]; *Savannah F. & W. R. Co. v. Beavers*, 113 Ga. 398[, 400] [(39 SE 82)]; *Crawford v. Pollard*, 55 Ga. App. 702 [(191 SE 162)]; *Garner v. Town of East Point*, 7 Ga. App. 630 (67 SE 847); *McCall v. McCallie*, 48 Ga. App. 99[, 101 (hn. 9) (171 SE 843)]; *Etheredge v. Central of Ga. R. Co.*, 122 Ga. 853 [(2)] (50 SE 1003)." *Brooks v. Logan*, 134 Ga. App. 226, 228 (2), 229 (213 SE2d 916). In the case sub judice, the very existence of a concrete walkway from the parking area to the steps of the porch leading social guests safely to defendants' residence is sufficient to rebut unsubstantiated allegations that defendants acted wilfully and wantonly towards plaintiff. The passive and static condition of the slosh hole two or three steps from the sidewalk and covered by the corner of the indoor-outdoor carpet also fails to evince wilful or wanton conduct, since plaintiff was not obliged or induced to step across it by any act of defendants. Compare *Fotopoulos v. Lamas*, 123 Ga. App. 731 (182 SE2d 326). The trial court correctly determined that defendants did not breach the applicable duty of care owed to a licensee.

*Judgment affirmed. Smith, J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED AUGUST 18, 1997 —
RECONSIDERATION DENIED AUGUST 29, 1997 — ▮▮▮▮▮▮▮

*Kenneth M. Henson, Jr.*, for appellant.
*Hertz & Link, Houston D. Smith III*, for appellees.