A01A0025. ALDREDGE et al. v. SYMBAS.

(547 SE2d 295)

JOHNSON, Presiding Judge.

While working at an off-duty security job, Atlanta police sergeant Jerald Aldredge heard a police radio transmission that individuals had just abandoned a stolen car at a nearby intersection. He was asked to abandon his off-duty job and help retrieve the stolen automobile. While en route, Aldredge saw a car run a red light and began following the car. The car drove into the front yard of Philip and Helen Shayne's home, and the driver jumped out and began to run.

The driver ran through the Shaynes' yard and onto the neighboring property owned by Nicholas Symbas, where he disappeared into a row of bushes and ivy. Aldredge abandoned his motorcycle and began running after the driver. When Aldredge approached the bushes, he

---

stopped, allowed his eyes to adjust to the dark, drew his weapon, and proceeded into the dimly lit wooded area between the Shaynes' property and Symbas' property. Although Aldredge concedes he could not see into the brush, he took one or two steps into the dark and fell into a seven-foot drainage ditch. Aldredge fractured his left wrist and his pelvis in the fall.

Aldredge and his wife sued the Shaynes and Symbas. Symbas moved for summary judgment, which the trial court granted. The Aldredges appeal from that order. In their appeal, the Aldredges list nine enumerations of error, all of which argue that the trial court erred in granting summary judgment to Symbas. We address the enumerations of error together and find that summary judgment was proper.

To prevail on a motion for summary judgment, the moving party must demonstrate that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law.[1] The moving party may carry this burden either by (1) presenting evidence negating an essential element of the nonmoving party's claim; or (2) demonstrating an absence of evidence to support an essential element of the nonmoving party's claim.[2] If the moving party discharges this burden, the nonmoving party cannot rest on his pleadings, but rather must point to specific evidence giving rise to a triable issue.[3]

The claim against Symbas relies on establishing liability between Symbas as a landowner and Aldredge as a person injured on the land. However, ownership alone is not sufficient to establish the liability of a landowner; the court must determine the parties' relation to each other to determine any duty owed.[4] Contrary to the Aldredges' argument, Symbas has never conceded that Aldredge was an invitee, and Georgia courts have established that a police officer acting in the course of his official duties is a licensee by law.[5] The basis for classifying police officers as licensees is that "policemen are likely to enter at unforeseeable times, upon unusual parts of the premises, and under circumstances of emergency, where care in looking after the premises, and in preparation for the visit, cannot reasonably be looked for."[6] Thus, Aldredge's legal status on the premises was that of a licensee.

---

[1] *Parks v. Multimedia Technologies*, 239 Ga. App. 282, 286 (2) (520 SE2d 517) (1999).

[2] Id.

[3] Id. at 286-287.

[4] See *Housing Auth. of Atlanta v. Famble*, 170 Ga. App. 509, 512-513 (317 SE2d 853) (1984).

[5] See *Martin v. Gaither*, 219 Ga. App. 646, 651 (466 SE2d 621) (1995); *Powell v. Watson*, 176 Ga. App. 559 (337 SE2d 403) (1985).

[6] (Citations and punctuation omitted.) *London Iron &c. Co. v. Abney*, 245 Ga. 759, 760 (1) (267 SE2d 214) (1980).

The standard for determining what duty an owner has to a licensee varies depending on the type of condition on the land. The Aldredges contend that the drainage ditch constitutes a mantrap or pitfall. If the condition constitutes a mantrap or pitfall, a landowner must refrain from wantonly and recklessly exposing a licensee to hidden perils.[7] This standard has been defined as follows:

> A possessor of land is subject to liability for physical harm caused to licensees by a condition on the land if, but only if, (a) the possessor knows or has reason to know of the condition and should realize that it involves an unreasonable risk of harm to such licensees, and should expect that they will not discover or realize the danger, and (b) he fails to exercise reasonable care to make the condition safe, or to warn the licensees of the condition and the risk involved. . . .[8]

We need not decide whether Symbas is subject to liability under this standard, however, because the Aldredges have failed to point to any evidence showing that the drainage ditch or surrounding foliage constitutes a mantrap or pitfall.

"The doctrine of mantrap or pitfall rest[s] upon the theory that the owner is expecting a trespasser or a licensee and has prepared the premises to cause him injury."[9] Examples of mantraps or pitfalls include spring guns, traps deliberately set to do injury, or other perils which have been hidden by an owner intending to inflict injury.[10] If a peril is not so close to a traveled path to pose a danger to those accidentally stepping off that path, it is not a mantrap.[11]

In the present case, the record is devoid of any evidence showing that Symbas constructed, controlled, or maintained the drainage ditch and surrounding area with the intent of harming trespassers or licensees. In fact, the record shows that although the drainage ditch is located on Symbas' property, it is subject to an easement granted in favor of the City of Atlanta by Symbas' predecessors in title. The easement gives the City of Atlanta the "right to construct and maintain over and upon my/our land abutting on and adjacent to Wesley Drive, any required drainage structures, or ditch within the easement area." Thus, the City of Atlanta actually constructed and main-

---

[7] Id. at 761 (2).

[8] (Citation and punctuation omitted.) Id.

[9] (Citations and punctuation omitted.) *Hawkins v. Brown*, 228 Ga. App. 311, 313 (2) (491 SE2d 423) (1997); *Crosby v. Savannah Elec. & Power Co.*, 114 Ga. App. 193, 198 (150 SE2d 563) (1966).

[10] *Hawkins*, supra; *Crosby*, supra at 198-201.

[11] *Moore-Sapp Investors v. Richards*, 240 Ga. App. 798, 799 (1) (a) (522 SE2d 739) (1999).

tains the drainage ditch. And, while the foliage and wooded area surrounding the drainage ditch were planted by Symbas, presumably to obscure the view of the drainage ditch, there is no evidence that it was planted with any intent to injure or with any conscious indifference as to infer an intent to injure. The evidence further shows that the drainage ditch and foliage are located 35 feet from the street and 25 feet from the edge of the public sidewalk.

The location of the shrubbery near the drainage ditch is not a mantrap or pitfall, but a static condition on Symbas' land. The duty an owner has to a licensee regarding a static or passive condition on his property is only for wilful or wanton injury.[12] This is true even where the presence of a licensee is actually known.[13] We agree with the trial court that the planting of shrubbery beside a drainage ditch does not evidence the requisite level of intent for wilfulness or wantonness. It is not reasonable to contend that Symbas should have foreseen that an officer would chase an alleged criminal far from the city street and sidewalk, at night, into foliage located on his property and then into the drainage ditch.[14]

The Aldredges contend that Symbas had a duty to keep his property safe for licensees by restricting access to the ditch, lighting the area surrounding the ditch, or erecting a barrier or fence around the ditch. Once again, as to a licensee, "no duty arises of keeping the usual condition of the premises up to any given standard of safety, except that they must not contain pitfalls, man-traps, and things of that character,"[15] which we have already determined were not present on Symbas' property.

> So long as it is not so close to the traveled way as to constitute a peril to those who may accidentally step aside from the traveled way, a party may excavate upon his land or have holes thereon and this right is not subject to abridgement by parties happening to go out of their way and receiving injuries.[16]

Symbas did not owe a duty to Aldredge to inspect the property or to prepare a safe place for his reception.[17]

In the present case, the record contains nothing but unsubstantiated allegations that Symbas acted wilfully or wantonly toward

---

[12] OCGA § 51-3-2 (b).

[13] *Hawkins*, supra at 312.

[14] See *Atlanta Gas Light Co. v. Gresham*, 260 Ga. 391, 392-393 (4) (394 SE2d 345) (1990).

[15] (Citation and punctuation omitted.) *Hawkins*, supra at 313.

[16] Id. at 313-314; see also *Moore-Sapp Investors*, supra at 800.

[17] *Crosby*, supra at 202.

Aldredge. The passive and static condition of the foliage surrounding the drainage ditch fails to evince wilful or wanton conduct, especially since Aldredge was not obliged or induced to step into it by any act of Symbas.[18] Although Aldredge did not see the drainage ditch prior to his fall, he testified that if it had been daylight, there was a good possibility that he might have seen it. In fact, the drainage ditch runs visibly under Wesley Drive, and there is no walking path anywhere near the ditch.[19] Because no evidence was introduced of wilful or wanton conduct, the trial court correctly granted Symbas' motion for summary judgment.

*Judgment affirmed. Ruffin and Ellington, JJ., concur.*

DECIDED MARCH 13, 2001 —

*Ted Marcus, Timothy I. McEwing, F. Renee Rockwell*, for appellants.

*Chambers, Mabry, McClelland & Brooks, Robert M. Darroch, Joan G. Crumpler*, for appellee.

---

[18] *Hawkins*, supra at 314.

[19] Compare *Wilbanks v. Echols*, 209 Ga. App. 210 (433 SE2d 134) (1993) (physical precedent only) (firefighter fell into 18-foot pit used to dispose of building debris; we found a question of fact regarding whether the owner negligently placed the pit on or near the public right-of-way).